*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALL SEASONS HOME IMPROVEMENT COMPANY,<br><br>                Plaintiff,<br><br>v.<br><br>ARCH CONCEPT CONSTRUCTION, INC.,<br><br>                Defendant. | Civil Action No. 16-751(FLW)<br><br>**OPINION** |

## **WOLFSON, United States District Judge:**

In this construction contract dispute, Plaintiff All Seasons Home Improvement Company ("Plaintiff" or "All Seasons"), seeks, *inter alia*, to recover payments for services rendered in connection with a subcontract between Defendant Arch Concept Construction, Inc. ("Arch" or "Defendant"), and Plaintiff. In its Complaint, Plaintiff asserts three claims: 1) breach of contract; 2) unjust enrichment; and 3) quantum meriut. In the instant matter, Defendant moves for summary judgment on all the counts, essentially arguing that Plaintiff is not entitled to certain payments because it failed to fully perform its contractual duties. In response, Plaintiff cross-moves for partial summary judgment on the Defendant's counterclaim for lost profits[1] on the basis that such profits are purely speculative. For the following reasons, because the parties' disputes largely center on material issues of fact, Defendant's motion for summary judgment is **DENIED**.

---

[1] Defendant represents that should the Court grant its motion for summary judgment dismissing Plaintiff's Complaint, Defendant will voluntarily dismiss all Counterclaims.

However, because Defendant has not proffered any evidence of lost profits, Plaintiff's motion for partial summary judgment on that counterclaim is **GRANTED**.

**BACKGROUND**

The following facts are not disputed unless otherwise noted. Arch is a New Jersey construction company that engages in the roofing business, primarily in the area of public works. (Defendant's Statement of Undisputed Material Facts ("Def. Statements"), ¶ 1.) In staffing its projects, Arch hires subcontractors to perform all or part of jobs that are awarded by local government entities, including public schools. (*Id.* at ¶¶ 2-3.) All Seasons is a Philadelphia based subcontractor that Arch hired to perform work pursuant to four separate subcontract agreements executed in 2015 (the "Subcontracts"). (*Id.* at ¶ 4.)

On February 1, 2015, Arch and All Seasons entered into a Master Subcontract Agreement to perform roofing work for the New Jersey Department of Military and Veterans' Affairs located in Somerset, New Jersey ("Somerset Project"). Pursuant to that agreement, All Seasons would be paid in the amount of $90,000 for the project and the completion date was set for May 15, 2015. (*Id.* at ¶ 12.) The Master Subcontract Agreement contains the following relevant language:

> 2. Subcontractor's Work. Subcontractor shall perform all work and shall furnish all supervision, labor, materials, plant, hoisting, scaffolding, tools, equipment, supplies, and all other things necessary for the construction and completion of the work described in each individual Work Order, including work incidental thereto and reasonably inferable therefrom, in strict accordance and full compliance with the terms of this Subcontract, and to the satisfaction of Contractor and the Owner.
>
> 3. Payment. Contractor shall pay Subcontractor for performance of the Work subject to additions and deductions by written change order, a liquidated sum which shall be calculated and agreed upon by the parties in each Individual Work Order.
>
> 4. Indemnification and Subcontractor's Liability. Subcontractor hereby assumes the entire responsibility and liability for all Work, supervision, labor, and material provided under any Work Order issued pursuant to this Subcontract, whether or not erected in place, and for all plant, scaffolding, tools, equipment, supplies and other

> things provided by Subcontractor until final acceptance of the entirety of the Work by Owner.
>
> Subcontractor shall be liable to Contractor for all costs contractor incurs as a result of any failure of Subcontractor, or any of its suppliers or subcontractors of any tier, to perform.
>
> 6. <u>Time of Performance</u>. Subcontractor will commence Work when directed by Contractor and will proceed with the Work in a prompt and diligent manner in accordance with the Project Schedule attached to the individual Work Order, as such Schedule may be amended from time to time by Contractor. TIME IS OF THE ESSENCE. Subcontractor shall be entitled to additional compensation for compliance with Schedule amendments only to the extent, if any, that contractor receives reimbursement from the Owner.

Master Subcontractor Agreement dated February 1, 2015, pp. 1-2.

According to Arch, for the Somerset Project, it paid All Seasons the agreed upon amount of $90,000 for the completion of that project. (Def. Statements, ¶ 17-18.) However, Plaintiff claims that Arch verbally requested change orders and that Plaintiff performed such additional work beyond the duties of the Agreement.[2] (Plaintiff's Counter-Statement of Undisputed Material Facts ("Plf. Statement"), ¶¶ 37-38.) In that regard, Plaintiff seeks an additional payment in the amount of $15,000 for the Somerset Project.

During the Summer of 2015, All Seasons expressed continued interest in performing additional work for Arch. (Def.'s Statements, ¶ 22.) In and around June and July 2015, the parties entered into three separate subcontracts — utilizing the same type of Master Subcontract Agreement as the one executed in connection with the Somerset Project — to perform roofing jobs that were scheduled to be completed by August 2015. (*Id.* at ¶ 13.) The first of these was executed on June 1, 2015, wherein All Seasons agreed to replace the roof of an elementary school building

---

[2] I note that on these competing motions for summary judgment, there are numerous issues of material fact surrounding the work that All Seasons contractually performed in connection with the various projects at issue in this litigation. To avoid needless repetition, I will discuss in more detail, in the Discussion Section, the parties' factual disputes as to those projects.

3

located in Burlington, New Jersey, for a sum of $150,000 ("Burlington Project"). The Project's completion date was set for August 1, 2015. (*Id.* at ¶ 21.) For various reasons discussed, *infra*, the Burlington Project was not timely completed. In that regard, while the contract price for the Burlington Project was $150,000, Arch, nevertheless, only paid All Seasons $140,000; Arch claims that the remaining $10,000 was used to offset some of the costs it incurred that were allegedly caused by All Seasons' failure to perform its contractual duties. (Def.'s Statements, ¶ 40.) On the other hand, All Seasons claims that not only does Arch owe All Seasons the $10,000 payment that it improperly withheld, Arch also owes a payment in the amount of $21,540.21, which represents change order work that was verbally agreed upon by the parties; the additional work purportedly included coping, implementation of downspouts, roof insulation, and the installation of additional medal panels. (Plf.'s Statements, ¶ 74.)

On June 2, 2015, Arch entered into another subcontract agreement with All Seasons to perform work on the roof of another elementary school located in Perth Amboy, New Jersey ("Perth Amboy Project"). (Def.'s Statements, ¶ 21.) The Perth Amboy Project was scheduled to be completed by August 15, 2015, for a payment of $350,000. (*Id.* at ¶ 21.) The completion of this Project was delayed until December 2015. (*Id.* at ¶ 31.) According to Arch, because All Seasons was unable to meet the demands of the work required, Arch was obligated to hire another subcontractor to complete All Seasons' tasks. (*Id.*) As a result, Arch claims that it incurred additional fees, including insurance premiums, which totaled $251,728. (*Id.* at ¶ 33.) Arch withheld $205,000 from the final payment, and instead, paid All Seasons only $145,000 for the Perth Amboy Project. (Plf.'s Statements, ¶ 105.) While All Seasons concedes that it is not entitled to the full $350,000 payment because of the assistance Arch provided in completing the project, (*Id.* at ¶¶ 103-34), All Seasons, nevertheless, claims that most of the delays and construction issues,

4

including machinery and materials, that arose during the Project were caused by Arch itself.[3] (*Id.* at ¶¶ 91-102.) Importantly, however, Plaintiff does not specify an amount that it seeks in connection with this project.

Finally, in July 2015, the parties entered into their last subcontract agreement, which involved roofing services at an elementary school in Estell Manor, New Jersey ("Manor Project"). This project was to be completed by August 1, 2015, and the contract price was $95,000. (Def.'s Statements, ¶ 22.) Like the other projects, this project was also delayed. Because of the delays, Arch claims that it incurred additional costs of $54,715.71, which includes, *inter alia*, expenses related to hiring other subcontractors, and a penalty assessed by the owner for the late performance. (*Id.* at ¶¶ 30, 34-35.) In that regard, Arch withheld $10,000 from the final payment to offset these costs; thus, All Seasons was paid $85,000 for the Manor Project. According to Plaintiff, however, the Manor Project was timely completed, and that Arch never provided All Seasons any reason for the withholding. (Plf.'s Statements, ¶¶ 132-33.) Moreover, Plaintiff claims that it was not paid for change order work that totaled $5,000. (*Id.* at ¶ 135.)

Overall, All Seasons claims it is owed $263,000 from Arch for the work that was performed on the four projects, less a reasonable, unspecified credit for the delay and assistance provided by Arch in completing certain projects. (*Id.* at ¶ 2.) On other hand, Arch asserts that it spent a total of $347,294 in expenses and penalties, incurred as a result of All Seasons'

---

[3] According to Plaintiff, in November 2015, Nicholay Gavrishev, principal of All Seasons, and Dusan Lazetic, principal of Arch, discussed the outstanding balance owed to All Seasons from the Perth Amboy Project. (Plf.'s Statements, ¶¶ 136-37.) In that meeting, Mr. Lazetic informed Mr. Gavrishev that Arch would only pay an additional $18,000, which proposal Mr. Gavrishev rejected. Rather, Mr. Gavrishev stated that All Seasons should be entitled to approximately $100,000 in addition to the $145,000 Arch paid to All Seasons. (*Id.* at ¶ 138.)

failure to fully perform under the Subcontracts. According to Arch, it only withheld $225,000 from All Seasons to compensate for those costs.

Based on these circumstances, Plaintiff brought suit against Defendant, claiming that Defendant breached the Subcontracts in connection with the four projects (Count I). In addition, Plaintiff asserts claims for unjust enrichment and quantum meruit (Count II and Count III). For its part, Defendant also asserts the same causes of action against Plaintiff as counterclaims, i.e., breach of contract, unjust enrichment and quantum meruit, with the addition of a claim for breach of the covenant of good faith and fair dealing. As damages, Defendant seeks, *inter alia*, an unspecified amount of lost profits.

In the instant matter, Defendant moves for summary judgment on all claims. Plaintiff cross-moves for partial summary judgment of Defendant's claim for lost profits.

## DISCUSSION

**I.  Standard of Review**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Garges v. People's Light & Theatre Co.*, 529 F. App'x 156, 160 (3d Cir. 2013), judgment entered, No. 13-1160, 2013 WL 3455818 (3d Cir. June 28, 2013) ("Summary judgment is proper where there is no genuine issue of material fact to be resolved and the moving party is entitled to judgment as a matter of law" (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986))). If a fact is capable of affecting the substantive outcome of the litigation, it is "material." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("Where the record taken as a whole could not lead a

6

rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial'" (internal citations omitted)); *Anderson*, 477 U.S. at 248. In deciding a motion for summary judgment, a court must draw all inferences from the underlying facts in the light most favorable to the party opposing the motion. *Garges*, 529 F. App'x at 160. The party moving for summary judgment bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp.*, 477 U.S. at 322–23.

"Once the moving party has properly supported its motion for summary judgment, the nonmoving party must 'do more than simply show there is some metaphysical doubt as to the material facts.'" *Garges*, 529 F. App'x at 160 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986)). Indeed, the party opposing the motion may not rest on mere allegations or denials in its pleading, *see id.* at 160; rather, the nonmoving party must present actual evidence that creates a genuine issue as to a material fact for trial, *Anderson*, 477 U.S. at 248–49; *see also* Fed. R. Civ. P. 56(c)(1)(A) (explaining that in order for the party opposing summary judgment to show "that a fact cannot be or is genuinely disputed," he must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" to support his factual position). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990). After discovery, if the nonmoving party "fails to make a showing sufficient to establish the existence of

7

an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex, 477 U.S. at 322–23); *see also Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009) ("The mere existence of some evidence in support of the nonmovant is insufficient to deny a motion for summary judgment; enough evidence must exist to enable a jury to reasonably find for the nonmovant on the issue" (citing *Anderson*, 477 U.S. at 249.

## II. Defendant's Motion for Summary Judgment

I turn first to Defendant's motion for summary judgment. While Defendant moves for summary dismissal on all counts of the Complaint, it focuses its entire briefing on the breach of contract claim; nowhere does Defendant make any arguments on the remaining claims, *i.e.*, unjust enrichment and quantum meruit. Rather, Defendant contends that because there is no genuine issue of material fact that Plaintiff failed to fully perform its duties under the Subcontracts, Defendant is entitled to summary judgment. In that regard, Defendant advises the Court that should I grant summary judgment in its favor, Defendant would voluntarily dismiss its Counterclaims.

### A. Breach of Contract

In New Jersey, the essential elements for "a cause of action for a breach of contract [are] a valid contract, defective performance by the defendant, and resulting damages." *Coyle v. Englander's*, 199 N.J. Super. 212, 223 (App. Div. 1985). In other words, to prevail on a breach of contract claim, a plaintiff must prove four elements: "(1) a valid contract existed between plaintiff and defendant; (2) plaintiff breached the contract; (3) defendant performed its obligations under

the contract; and (4) defendant was damaged as a result of the breach." *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 275 F. Supp. 2d 543, 566 (D.N.J. 2003) (citing *Coyle*, 199 N.J. Super. at 223); *Hutchinson v. Del. Sav. Bank FSB*, 410 F. Supp. 2d 374, 385 n. 21 (D.N.J. 2006). To recover under a breach of contract claim, the party bringing the suit has the burden of establishing the breach. *Nolan v. Control Data Corp.*, 243 N.J. Super. 420, 423 (App. Div. 1990).

Contracts should be construed according to the plain and ordinary meaning of their terms. *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 364 (3d Cir. 2004). "Clear contractual terms that are capable of one reasonable interpretation must be given effect without reference to matters outside the contract." *Bohler-Uddeholm, Inc. v. Ellwood Group*, 247 F.3d 79, 93 (3d Cir. 2001) (internal quotations and citations omitted). If contractual language is "subject to only one reasonable interpretation," summary judgment may be appropriate. *Arnold M. Diamond, Inc. v. Gulf Coast Trailing Co.*, 180 F.3d 518, 521 (3d Cir. 1999). Conversely, a contract is ambiguous if it is "susceptible of more than one meaning." *Sumitomo Mach. Corp. of Am., Inc. v. AlliedSignal, Inc.*, 81 F.3d 328, 332 (3d Cir. 1996) (quotation omitted). If the meaning of a contract is ambiguous, it is not subject to summary judgment.

Furthermore, relevant here, "[i]t is black letter contract law that a material breach by either party to a bilateral contract excuses the other party from rendering any further contractual performance." *Magnet Res., Inc. v. Summit MRI, Inc.*, 318 N.J. Super. 275, 287 (App. Div. 1998) (citing *Nolan v. Lee Ho*, 120 N.J. 465, 472 (1990)). "Whether conduct constitutes a breach of contract and, if it does, whether the breach is material are ordinarily jury questions." *Id.* at 286; *see Norfolk S. Ry. Co. v. Basell USA Inc.*, 512 F.3d 86, 92 (3d Cir. 2008) ("Whether the breach of a contract is material is generally an issue of fact."). "However, '[a]s is true of virtually any factual question, if the materiality question in a given case admits of only one reasonable answer (because

the evidence on the point is either undisputed or sufficiently lopsided), then the court must intervene and address what is ordinarily a factual question as a question of law.'" *Norfolk*, 514 F.3d at 92 (quoting *Gibson v. City of Cranston*, 37 F.3d 731, 736 (1st Cir. 1994)).

Here, as a preliminary matter, Plaintiff seeks approximately $42,000 for work performed pursuant to change orders that were verbally agreed to by the parties during the pendency of the four projects. While Defendant argues that those change orders were not valid, as all additional work must be approved in writing pursuant to the Agreements, Defendant nevertheless represents that for the purposes of this motion, it does not contest the change orders. Defendant reasons that it spent over $347,000 in expenses to correct the deficiencies due to various failures on the part of Plaintiff. Defendant claims that because it only withheld $225,000 from the final payment to Plaintiff, even if these change orders were properly executed, their value does not exceed $122,294, *i.e.*, the difference between expenses Defendant allegedly incurred and the amount withheld. As such, Defendant contends that the dispute over the change orders does not preclude summary judgment in its favor. *See* Def.'s Brief in Support of Motion for Summary Judgment, p. 10. I note at the outset that because Defendant does not challenge the validity of the change orders on this motion, I will not address it. However, that said, I will discuss these change orders in the context of determining whether issues of fact exist.

The gist of Defendant's motion for summary judgment is that All Seasons, as the subcontractor, is liable to Defendant under the Subcontracts due to various failures to perform work as promised. And, as a result, Defendant incurred expenses that are above and beyond the amount of payment Plaintiff claims it is owed by Defendant in this litigation, i.e., $263,000. On the other side of the coin, Plaintiff contends that 1) the expenses that Defendant incurred were caused by Defendant's own conduct, and 2) Defendant inflated the amount of those expenses

without providing the necessary supporting evidence. Indeed, the parties are essentially pointing the finger at each other over who was at fault for the multiple construction delays, implantation of change orders, and recruitment of additional subcontractors. More importantly, the parties dispute who should bear those costs. Because I find that there are genuine issues of material fact, summary judgment is not appropriate. Below are my reasons.

1. **Somerset Project**

The Somerset Project involved roof replacement work for New Jersey Department Military and Veterans' Affairs. Arch agreed to pay the sum of $90,000 to All Seasons for the Project. The Project was completed on time without delays. While the full payment was remitted to All Seasons, Plaintiff argues that Defendant failed to pay an additional $15,000 for work performed pursuant to verbal change orders. Specifically, Plaintiff proffers as evidence three written change orders submitted by the Department of Military and Veteran Affairs to Arch. Although these change orders requested certain work to be done, the work outlined is related to the contract between Arch and the Department, not written orders between Arch and All Seasons. *See* Change Orders dated May 28, 2015, July 22, 2015 and May 5, 2018.

Indeed, Plaintiff claims that it performed the additional work set forth in these aforementioned change orders after Arch verbally requested All Seasons to do so. In that regard, All Seasons' principal, Mr. Gavrishev, testified that he and Arch's principal, Mr. Lazetic, and Arch's Field Supervisor, Mr. Steven Lobley, had a verbal agreement that All Seasons would take on these change orders.[4] *See* Gavrishev's Dep., T39:15-18. However, Mr. Lobley testified that

---

[4] Defendant concedes, however, that it "inadvertently" failed to pay an additional $1,800 for a change order in connection with the Somerset Project. *See* Lazetic's Reply Cert., ¶ 4. On this point, I find that Plaintiff is entitled to a credit of $1,800. Nevertheless, because there are substantial issues of fact in this case as to which party is in default and the amount of payment due,

11

he did not recall any change orders being performed at the Somerset Project. *See* Lobley Dep., T14:14-18. For his part, Mr. Lazetic claims that no such work was performed; in fact, Mr. Lazetic attests that All Seasons never sent any invoice to Arch for the additional work. *See* Lazetic Reply Cert., ¶ 4. Based on that testimony, Defendant argues that All Seasons has not produced any documentation to demonstrate that it indeed performed any additional work at the Somerset Project. Clearly, there are numerous issues of fact present. While All Seasons insists that it carried out substantial, additional duties beyond the scope of the Subcontract, Arch disputes that Plaintiff performed such work, and that even if Plaintiff did, Plaintiff did not receive any written permission to do so pursuant to Section 3 of the Subcontract. In any event, as I indicated, *supra*, Defendant does not challenge the validity of this change order on this motion. Accordingly, Defendant is not entitled to summary judgment on this claim.

### 2. Burlington Project

On the Burlington project, there is no dispute that Arch paid All Seasons $140,000, which is $10,000 less than the contract price, *i.e.*, $150,000. Defendant claims it made such withholding to compensate for various expenses incurred to rectify issues caused by All Seasons' workmanship. On this point, Mr. Lazetic states that Arch had to hire another subcontractor, Adler Roof Vac, to remove stone from the roof of the school building, a task All Seasons did not perform satisfactorily. *See* Lazetic Reply Cert., ¶ 6. Arch paid Adler Roof Vac a total of $8,500. *Id.* In addition, Mr. Lazetic claims that Arch was "backcharged $32,800 by the owner . . . due to All Seasons' untimely performance . . . ." *Id.*

---

it is not appropriate at this time for this Court to enter judgment for this nominal amount. Rather, the credit will be applied at the end of the case when a final judgment is entered.

In contrast to Arch's version of events, Plaintiff faults Defendant for the delays that occurred. Mr. Gavrishev testified that in order to remove construction debris at the Burlington Project, All Seasons required a crane. *See* Gavrishev Dep., T78:7-9. Mr. Gavrishev acknowledged that All Seasons must furnish its own equipment; he, nonetheless, explained that Mr. Lazetic agreed, verbally, that Arch would supply its own crane and workers to operate the machinery. *Id.* at T83:3-10. Mr. Gavrishev further testified that because Arch did not timely provide the crane, it caused the Project to be delayed for at least one week. *Id.* at T101:11-17, T101:21-102:4, T102:8-14. Moreover, Mr. Gavrishev explained that further delays were caused by weather and an unexpected latent condition of the roof that required a change to the insulation material. *Id.* at T88:14-T92:23. Indeed, Mr. Gavrishev claims that Arch was well aware of these issues, which were beyond All Seasons' control. *Id.* at 91:25-92:23.[5] Finally, Mr. Gavrishev testified that with respect to the hiring of an additional subcontractor for the removal debris, Mr. Lazetic had informed him that Arch was bearing the cost associated with the hiring. *Id.* at T79:25-80:13.

In sum, based on this record, there are various issues of fact relating to the cause of the delay and who bears the additional costs incurred by Arch, thus, precluding summary judgment on this claim.

### 3. Perth Amboy Project

In June 2015, the parties entered into a subcontract for the Perth Amboy Project. Arch withheld $205,000 from the final payment of $350,000. On this motion, Defendant claims that it is entitled to summary judgment on this project, because various instances of nonperformance by

---

[5] In connection with the Burlington Project, All Seasons seeks a payment of $21,540.21, which it argues represents additional change order work that Arch had verbally authorized. I note, again, that for the purposes of this motion, Defendant does not dispute this amount. However, because summary judgment is not appropriate, the issue of this change order remains in the case.

Plaintiff justified the withholding. First, according to Defendant, the demands of multiple construction sites caused Plaintiff to understaff the Perth Amboy Project. *See* Lazetic Reply Cert., ¶ 7. Consequently, Arch provided its own employees for approximately twenty weeks, resulting in labor costs of approximately $188,929, which costs included worker's compensation insurance. *Id.* at ¶ 8. In addition, Arch claims that it was compelled to hire another subcontractor, JA Construction, to complete a part of the work; Arch paid this subcontractor $38,200. *Id.* at ¶ 8. Notwithstanding the extra workers, Arch claims that it was still unable to complete the Project by August 15, 2015.

All Seasons paints a much different picture. Plaintiff argues that 1) Defendant was partially responsible for the delays, 2) JA Construction was not hired to perform roofing work, and 3) Defendant inflated its actual labor expenses because it inaccurately reported its employees' labor hours on the Project.[6] Mr. Gavrishev detailed various issues that arose during the Perth Amboy Project. For example, he testified that because All Seasons' roof cutter was not working properly, Arch verbally agreed to provide another cutter. *See* Gavrishev's Dep., T133:22-134:3. However, when Arch's cutter also failed to properly function, All Seasons' workers were forced to pull up the roof by hand, which, according to Mr. Gavrishev, delayed the project for at least one month. *Id.* at T136:2-17. Another alleged significant delay, according to Mr. Gavrishev, stemmed from Arch's direction to substitute the roof's fiber board, as indicated in the original specification, with another material. *See id.* at T138:13-T139:1; T146:21-25. This substitution, Mr. Gavrishev testified, delayed the project for weeks. *Id.* at T147:7-11. Lastly, Mr. Gavrishev stated that he

---

[6] I note that Plaintiff concedes that it is not entitled to be paid the full amount of $350,000 for the Perth Amboy Project, because Defendant provided substantial assistance to complete the work. *See* Plf.'s Statement, ¶ 104. Nevertheless, Plaintiff claims that Defendant owes more than the $145,00 payment that Plaintiff received in connection with this project.

never saw workers from JA Construction performing roofing work. Indeed, the testimony of the field supervisor, Mr. Lobley, tends to corroborate Mr. Gavrishev's observation; Mr. Lobley testified that he was not familiar with JA Construction and had no knowledge of the company performing any work on the Perth Amboy Project. *See* Lobley's Dep., T46:9-12.

Plaintiff also takes issue with the evidentiary support submitted by Defendant. For one, the certified payroll records from Perth Amboy Board of Education[7] demonstrate that Arch only submitted 13 weeks of payroll for its own workers, not 22 weeks as advanced by Defendant on this motion. While Defendant, in its Reply, submits its own payroll records that show 22 weeks of pay, the Court cannot weigh the evidence and resolve this issue of fact on this motion.

Similarly, in response to Mr. Gavrishev's claims that JA Construction never performed any work on the Perth Amboy Project, Defendant submitted payroll records and invoices that Defendant argues substantiate JA Construction's work at the Project. However, those records raise more questions than answers. Although the payroll record shows that JA Construction performed certain work for Arch, nowhere does the record reflect for which project the subcontractor was hired. *See* Payroll Record dated June 2, 2015-August 15, 2015 (Ex. E of Lazetic's Cert. in Support of Motion for Summary Judgment). Furthermore, the customer invoices from JA Construction do not indicate what type of work was performed. In any event, the testimony of Mr. Lobley — Arch's own supervisor — conflicts with Defendant's position on this issue.

There are clearly multiple issues of fact surrounding the amount of expenses that Defendant incurred as a result of the delays in completing the Project. Also, there is competing evidence and testimony in assessing which party is responsible for those delays. I am not permitted to weigh

---

[7] The Board produced the payroll records in response to a subpoena issued by Plaintiff during the course of discovery.

those facts; to do so would usurp the role of the factfinder. Accordingly, summary judgment on this claim is also denied.

### 4. Manor Project

The last subcontract dealt with the Manor Project. There is no dispute that Plaintiff was paid $10,000 less than the contract price for the Project, *i.e.*, $95,000. According to Defendant, it incurred additional costs in the amount of $54,716, which were expended to complete and correct certain work that Plaintiff failed to perform adequately.[8] Specifically, Defendant submits that the Manor Project was not completed until mid-November 2015, a delay of over three months, and as such, that it paid its own workers for fifteen weeks to assist Plaintiff in completing the Project. *See* Lazetic Reply Cert., ¶ 14. Moreover, Defendant maintains that its workers had to complete a punchlist *after* All Seasons left the Project in order to "clean up aspects of All Seasons' work." *Id.* Lastly, Arch claims that it incurred a penalty in the amount of $5,825, assessed by the owner, for the extended construction period. *Id.*

Like all other projects, Plaintiff disputes Defendant's version of events. First, Plaintiff insists that the Manor Project was completed on time. *See* Gavrishev's Dep., T167:19-23. Crucially, Mr. Lobley's testimony tends to corroborate that fact; Mr. Lobley testified that All Seasons completed the work and that it took four days for Arch's workers to finish the punchlist, not weeks. *See* Lobley's Dep., T41:4-42:12. While Arch submitted payroll records of its workers that, on their face, show certain roofing work was performed at the Manor Project by Arch, those records, however, are devoid of any information for this Court to assess whether the type of work performed by Arch's employees was related to finishing or correcting All Seasons' job.

---

[8]  Plaintiff claims that there was a verbal agreement for an additional $5,000 for change order work associated with the Manor Project. As with other change orders, on this motion, Defendant does not contest this amount. *See* Lazetic Reply Cert., ¶ 13.

16

Plaintiff also disputes that the owner assessed a late fee of $5,825. On this point, Arch submits a document entitled "Construction Change Directive" sent by Estell Manor Board of Education. While the document reflects a charge of $5,825, the purpose of such a charge is not entirely clear. *See* Construction Change Directive, dated February 23, 2016. Indeed, it indicates that this particular charge was the result of "the contractor's extended construction period"; however, the document does not define such a fee as a late charge. As such, that phrase is subject to different interpretations, and without more, I cannot make findings of fact. Overall, in light of conflicting evidence, particularly Mr. Lobley's testimony, Defendant is not entitled to summary judgment on this claim.

In conclusion, because there are numerous issues of fact with respect to Plaintiff's breach of contract claim, this aspect of Defendant's motion for summary judgment is denied.

### B. Unjust Enrichment and Quantum Meruit

The parties have not addressed the unjust enrichment and quantum meruit claims in their briefing. As such, I have no basis to resolve them on this motion. I note, however, that in the Complaint, these quasi-contract theories of recovery are based on Plaintiff's allegations that Defendant breached the Subcontracts; Plaintiff explicitly alleges that "[t]he failure of [Arch] to pay All Seasons what it was owed pursuant to the Subcontract Agreements enriched [Arch] . . . ." Compl., ¶¶ 25, 29-30. But, under New Jersey law, "[w]here there is an express contract covering the identical subject matter of the claim, plaintiff cannot pursue a quasi-contractual claim for unjust enrichment or quantum meruit. *Winslow v. Corp. Express, Inc.*, 364 N.J. Super. 128, 143 (App. Div. 2003); *St. Matthew's Baptist Church v. Wachovia Bank Nat'l Ass'n*, No. 04-4540, 2005 U.S. Dist. LEXIS 46607, at *26 (D.N.J. May 18, 2005). In other words, "quasi-contract liability will

not be imposed when a valid, unrescinded contract governs the rights of the parties." *Duffy v. Charles Schwab & Co., Inc.*, 123 F. Supp.2d 802, 814 (D.N.J. 2000) (citations omitted).

Here, based on the pleadings, the entirety of Plaintiff's unjust enrichment and quantum meruit claims are based on the parties' contractual relationship and the alleged breach of the various Subcontracts. Thus, it appears, on the face of the Complaint, Plaintiff may not pursue these alternative theories of liability. However, as noted, *supra*, Defendant posits that because the change orders — which remain as issues in this case — are not written, they are not compensable under the Subcontracts. Based on the position that the change orders, if any, are outside the parties' contract, Plaintiff may pursue its quasi-contractual claims as an alternative theory to recover the total value of the change order work performed.

### III. Plaintiff's Motion for Partial Summary Judgment

Plaintiff moves for partial summary judgment on Defendant's claim for lost profits. Instead of substantively opposing Plaintiff's motion, Defendant asks the Court to rely on its moving brief submitted in connection with Defendant's motion for summary judgment. Essentially, Defendant represents that it would voluntarily withdraw its counterclaims should this Court grant Defendant's dispositive motion. However, having denied that motion, the Court must necessarily resolve Plaintiff's motion, albeit without the benefit of Defendant's position.

"Evidence affording a basis for estimating damages with some reasonable degree of certainty is sufficient to support an award of compensatory damages." *Paolicelli v. Wojciechowski*, 132 N.J. Super. 274, 278-79 (App. Div.), *cert. denied*, 68 N.J. 153 (1975); *see also Viviano v. CBS, Inc.*, 251 N.J. Super. 113, 129 (N.J. Super. 1991); *Westrich v. McBride*, 204 N.J. Super. 550, 557 (Law Div. 1984) (holding that "damages claimed in a breach of contract action must be reasonable, certain and not speculative"). As a form of compensatory damages, lost profits

18

may be recoverable if capable of being established to a "reasonable degree of certainty." *Desai v. Bd. of Adjustment of Town of Phillipsburg*, 360 N.J. Super. 586, 595 (App. Div. 2003) (citing *Stanley Co. of Am. v. Hercules Powder Co.*, 16 N.J. 295, 314 (1954)), *cert. denied*, 177 N.J. 492 (2003); *Juice Entm't, LLC v. Live Nation Entm't, Inc.*, No. 11-7318, No. 11-7318, 2018 U.S. Dist. LEXIS 87505, at *27 (D.N.J. May 23, 2018). Thus, anticipated profits that are too remote, uncertain, or speculative are not recoverable. *Id.* That a party may not be able to fix its lost profits with precision will not preclude recovery of damages, but courts require a "reasonably accurate and fair basis for the computation of alleged lost profits." *V.A.L. Floors, Inc. v. Westminister Communities, Inc.*, 355 N.J. Super. 416, 424 (App. Div. 2002).

To make such a computation, a partying seeking lost profits must present evidence of projected profits, and present and future costs. *See Borough of Fort Lee v. Banque National de Paris*, 311 N.J. Super. 280, 296, 710 A.2d 1 (N.J. Super. App. Div. 1998) ("'Lost profits' signifies the difference between gross income and the costs or expense which had to be expended to produce the income."). Without proof of costs, an award of lost profits would be based on pure speculation. *See J.L. Davis & Associates v. Heidler,* 263 N.J. Super. 264, 276 (App. Div. 1993); *see also Deaktor v. Fox Grocery Co.*, 475 F.2d 1112, 1116 (3d Cir. 1973) ("Plaintiffs' failure to produce evidence concerning the factors essential to establish net profit as opposed to gross profit, in effect, meant that the jury would have had to speculate as to the amount of damages."); *Lithuanian Commerce Corp. v. Sara Lee Hosiery*, 23 F. Supp. 2d 509, 515 (D.N.J. 1998).

Here, in connection with its Counterclaims, Defendant alleges that it lost future profits by spending additional time "rectifying the inadequate work and/or incomplete work as a result of All Seasons' failures." Counterclaims, ¶ 40. Defendant maintains that it would have undertaken additional work but for Plaintiff's inadequate workmanship. *Id.* Other than those allegations,

Defendant has not presented any evidence in the record to prove lost profits. Indeed, Defendant has not submitted any methodology for measuring its lost profits, any data on projected income or anticipated income, and more importantly, no calculation of costs. In fact, according to Plaintiff, during discovery, it propounded document requests and interrogatories in an effort to discover evidence of lost profits. There is no dispute that Defendant provided no information or documents in that regard. Tellingly, when Mr. Lazetic was asked during his deposition about lost profits, he provided no details or information on that subject. *See* Lazetic's Dep., T146:23-T147:16. Accordingly, absent any evidence, Defendant has not met its burden of establishing lost profits, and its claim is merely speculative. Plaintiff's motion for partial summary judgment is granted.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is **DENIED**. Plaintiff's motion for partial summary judgment on Defendant's claim for lost profits is **GRANTED**.

DATED: August 16, 2018                     /s/ Freda L. Wolfson
                                           Hon. Freda L. Wolfson
                                           U.S. Dist. Judge